## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

IN RE:                          *
JILL M. HOWARD,                 *    CHAPTER 13
      Debtor              *
                                *    CASE NO. 1:14-bk-05752-MDF
RANDY L. HOWARD,                *
      Plaintiff           *
                                *
      v.                  *    ADV. NO.  1:15-ap-00067MDF
                                *
JILL M. HOWARD,                 *
      Defendant           *

## OPINION

Before me is the Motion filed by Jill M. Howard ("Debtor") to dismiss the Amended Complaint ("Complaint") filed by Randy L. Howard ("Howard") in the above-captioned adversary case. In the Complaint, Howard seeks to enforce the terms of the Marital Settlement Agreement (the "MSA") executed in connection with the parties' divorce. Under the terms of the MSA, Debtor became the sole owner of the marital residence (the "Residence"), and Howard was entitled to receive 35% of the equity.

In the Complaint, Howard advances four alternative legal theories to support his assertion that his debt is not subject to discharge. These alternatives are: that his equity interest is not property of the estate; that his equity interest is secured by a judgment lien; that his claim is excepted from discharge under either 11 U.S.C. § 523(a)(2) or (a)(4); and that Debtor's plan fails to meet the "best interest of creditors" test of 11 U.S.C. § 1325(a)(5). In her Motion, Debtor disputes Howard's various theories asserting that all he holds is an unsecured claim for his share of the marital property, which may be discharged if she completes the payments under

her Chapter 13 plan. For the reasons set forth below, the Motion will be granted in part and denied in part.[1]

## II. Factual Background

On September 19, 2012, Howard and Debtor executed the MSA in which they agreed to divorce and settle all property issues between them. The MSA provided for the "absolute and final settlement of their respective marital property rights and all claims for support and alimony." Compl. Ex. A, Preamble. Howard agreed to convey "any and all interest" in the Residence to Debtor "upon such time that [Debtor] refinances the outstanding debt (Bank of America mortgage) on the property." Compl. Ex. A, ¶ 2.A. The amount of equity over and above the existing mortgage's payoff amount was to be determined by an appraisal with the equity split between the parties – Howard receiving 35% and Debtor 65%. The appraisal concluded that the value of the Residence was $223,500. After deducting the mortgage payoff, $65,000 of the equity was allocated to Debtor and $35,000 was allocated to Howard. The MSA provided that Debtor would have two years after the Residence was refinanced to pay Howard his equity interest. It also provided that Howard could file a mortgage against the Residence to secure his equitable interest, which he never did.

Curiously, while the MSA was executed in September 2012, it specified that Debtor would obtain financing by July 1, 2012. In December 2012 Debtor refinanced the mortgage, and Howard conveyed his legal interest in the Residence to Debtor. From the refinancing, Debtor

---

[1]This Court has jurisdiction pursuant to 28 U.S.C. §§157 and 1334. This matter is a core, non-*Stern* proceeding pursuant to 28 U.S.C. §157(b)(2)(A), (I) and (O). This Opinion constitutes findings of fact and conclusions of law made pursuant to Federal Rule of Bankruptcy Procedure 7052.

obtained a new mortgage of approximately $178,800 and $15,841.77 in cash. No amount from the refinancing was paid to Howard.

In late August 2014, about the time the two-year deadline for paying Howard's equity interest was set to expire, the parties met to discuss options for Debtor to pay Howard his share of the equity. Howard orally agreed to lend Debtor "approximately $5000 to pay off a current 401k loan so that she could take out a new 401k loan and pay him a portion of the equitable interest." Compl. ¶ 83. In turn, Debtor agreed to pay off the remainder of her MSA obligation within one year. After Howard loaned Debtor the additional funds, she satisfied the existing 401k loan and obtained a new loan from which she paid Howard $17,165, or approximately half the amount he was to receive under the MSA. On December 15, 2014, Debtor filed her bankruptcy petition without paying the balance of Howard's claim.

## II. Procedural History

On April 22, 2015, Howard filed a proof of claim for $17,835 in Debtor's bankruptcy case. His adversary case was filed on April 23, 2015, but was dismissed on June 23, 2015 after he failed to respond to Debtor's motion to dismiss. On July 1, 2015, the case was reinstated with Debtor's concurrence, and Howard was granted leave to amend his complaint.

The Complaint consists of five counts. In Count I, Howard seeks a declaration that Debtor holds Howard's equity interest in the Residence in constructive trust. In Count II, he alternatively asserts that he has a security interest in the Residence. In Count III, Howard alleges that if he does not hold a property interest in the Residence or hold a secured claim, he has an unsecured claim of $17,835.00 that is nondischargeable under 11 U.S.C. § 523(a)(2). In Count IV, Howard alleges that Debtor embezzled funds that should have been paid to him so the claim

3

is nondischargeable under 11 U.S.C. § 523(a)(4). Finally, in Count V, Howard alleges that Debtor should not receive a Chapter 13 discharge because the value of her non-exempt, unencumbered property that could be liquidated in a Chapter 7 case exceeds the value of her proposed Chapter 13 Plan.

### III. Discussion

*A. Dismissal under Fed. R. Civ. P. 12(b)(6)*

Under Fed. R. Civ. P. 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted." In deciding a motion to dismiss under Rule 12(b)(6), a court must treat the facts alleged in the complaint as true, construe the complaint in the light most favorable to the non-moving party, draw all reasonable inferences in favor of the non-moving party, and, finally, determine whether the non-moving party may be entitled to relief. *Kehr Packages, Inc. v. Fidelcor, Inc.,* 926 F.2d 1406, 1410 (3d Cir. 1991), *cert. denied*, 111 S. Ct. 2839 (1991).

In order to "survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id*. at 1948-49. Although a complaint need only consist of a "short and plain statement of the claim showing that the pleader is entitled to relief," to survive a motion to dismiss, the complaint must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly,* 550 U.S. at 555).

4

*B. Count I – Constructive Trust*

In the first count of the Complaint, Howard asks the Court to declare that the balance of the equity interest owed to him is not a claim against the estate, but a property interest held by Debtor in constructive trust. Howard cites two arguments to support the imposition of a constructive trust. First, he alleges that at the time of the transfer, the parties were in a confidential relationship. Second, he alleges that principles of unjust enrichment support his request for imposition of a constructive trust.

Pennsylvania courts recognize constructive trusts, which they have defined as:

> a relationship with respect to property subjecting the person by whom the title to the property is held to an equitable duty to convey it to another on the ground that his acquisition or the retention of the property is wrongful and that he would be unjustly enriched if he were permitted to retain the property.

*City of Phila. v. Heinel Motors,* 142 Pa. Super. 493, 502-03, 16 A.2d 761, 765-66 (1940). *See Yohe v. Yohe*, 466 Pa. 405, 411, 353 A.2d 417, 420 (1976); *Gee v. Eberle*, 279 Pa. Super. 101, 112, 420 A.2d 1050, 1056 (1980). Under Pennsylvania law, a constructive trust is a fictional trust, an equitable remedy to avoid unjust enrichment. Specific intent to create a constructive trust is not required. *In re Joseph B. Dahlkemper Co., Inc.*, 165 B.R. 149, 154 (Bankr. W.D. Pa. 1994) (citing *Stauffer v. Stauffer,* 465 Pa. 558, 567, 351 A.2d 236, 241 (1976)); *Roberson v. Davis*, 397 Pa. Super. 292, 296, 580 A.2d 39, 41(1990); *Denny v. Cavalieri,* 297 Pa. Super. 129, 132, 443 A.2d 333, 335 (1982). Although it is a flexible remedy, Pennsylvania courts have imposed a constructive trust only if a party acquires property "as a result of fraud, duress, undue influence, mistake, abuse of a confidential relationship, or other such circumstances suggesting unjust enrichment." *Louis Dolente & Sons v. USF&G*, 252 F. Supp.2d 178, 182 (E.D. Pa

2003)(citations omitted). A constructive trust is impressed to restore particular funds or property to the true owner. *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 214 (2002).

The Court of Appeals for the Third Circuit has held that property subject to an express or constructive trust is excluded from the estate under 11 U.S.C. § 541(d). *Official Comm. of Unsecured Creditors of Columbia Gas Transmission Corp. v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys, Inc.*), 997 F.2d 1039, 1059 (3d Cir. 1993) (applying federal common law). If a debtor holds only legal title to property, but holds no equitable interest, the property remains outside the estate. Other circuits have been unwilling to recognize constructive trusts in bankruptcy, however,  unless they were imposed before the petition was filed. The Court of Appeals for the Sixth Circuit has held that constructive trusts are an "anathema to the equities of bankruptcy" and serve only as a remedy, not as an interest in property. *XL/Datacomp, Inc. v. Wilson ( In re Omegas Group*), 16 F.3d 1443, 1452 (6th Cir. 1994). "Because the constructive trust doctrine can wreak . . . havoc with the priority system ordained by the Bankruptcy Code, bankruptcy courts are generally reluctant 'to impose constructive trusts without a substantial reason to do so.'" *Haber Oil Co., Inc. v. Swinehart (In re Haber Oil Co., Inc.)* 12 F.3d 426, 436 (5th Cir. 1994) (quoting *Neochem Corp. v. Behring Int's, Inc. (In re Behring Int'l, Inc.)*, 61 B.R. 896, 902 (Bankr. N.D. Tex. 1986)).

Here, the MSA provided that Debtor was to retain the Residence as her sole property and that Howard would convey to her his interest when Debtor refinanced the joint mortgage. The MSA further provided that Debtor would have two years from the date the mortgage was refinanced to pay Howard "his outstanding equity in the property" and that Howard would be permitted to "evidence this debt by a second mortgage on the property." Compl. Ex. A. ¶ 2.

6

Debtor refinanced the Residence in December 2012, and Howard tendered the deed for his interest to Debtor. Rather than the full equity interest of $35,000, Debtor paid Howard only $17,165 before she filed her bankruptcy petition.

The legal issue posed is thus – should the Court find that Debtor is holding Howard's unpaid equity interest in the Residence in constructive trust, or does he simply have a claim against the estate for his remaining interest? If a confidential relationship had existed between Debtor and Howard, there would be a stronger argument for finding that a constructive trust should be impressed as once the confidential relationship is established, the burden of proof shifts to the party benefitting from the transaction. 34 Standard PA Practice 2d § 160:258 (2015).

The difficulty facing Howard, however, is that he has alleged no facts to support a finding that the parties had a confidential relationship. The existence of a close family relationship, without more, is insufficient. *DePaul v. DePaul*, 287 Pa. Super. 244, 249, 429 A.2d 1182, 1194 (1981). No facts have been alleged to suggest that Howard "reposed a special confidence in [Debtor] to the extent that the parties [did] not deal with each other on equal terms, either because of an overmastering dominance on the one side, or weakness, dependence or justifiable trust, on the other." *Moreland v. Metrovich,* 249 Pa. Super. 88, 95, 375 A.2d 772 (1977).

The question of whether a constructive trust should be impressed on the Residence because Debtor has been unjustly enriched, however, is more complex. Howard has alleged that Debtor agreed to pay him his equity interest in the Residence when it was refinanced, that he deeded his interest in the Residence to her, but that she failed to fulfill her obligations under the MSA and, instead, retained a greater equitable share in the Residence than was contemplated by

7

the parties. In Pennsylvania, constructive trusts arise when the fraud or wrong occurs. *Electric*

*M&R, Inc. v. Aultman (In re Aultman)*, 223 B.R. 481, 483 (Bankr. W.D. Pa. 1998). If Howard is

able to prove that Debtor fraudulently retained the equity in the Residence he will have

established a basis for imposing a constructive trust. *See In re Shareholders Funding, Inc.*, 188

B.R. 150, 158 (Bankr. E.D. Pa. 1995) (observing that absent a confidential relationship, there

must be a showing of wrongdoing by defendant). Accordingly, these allegations are sufficient to

withstand the Motion to Dismiss on Count I.

   C. *Count II – Secured Interest*

   Howard asserts that if his interest in the Residence is determined to be a debt, then his

claim is secured by a judgment lien against the property. The lien arose, Howard argues, under

the provisions of 42 Pa.C.S.A. § 4303(a), which provides as follows:

> Any judgment or other order of a court of common pleas for the payment of
> money shall be a lien upon real property on the conditions, to the extent and with
> the priority provided by statute or prescribed by general rule . . . when it is
> entered of record in the office of the clerk of the court of common pleas of the
> county where the real property is situated . . . .

42 Pa. C.S.A. § 4303(a).

   The parties agree that the divorce decree was entered on the civil proceedings docket in

the Office of the Prothonotary for Dauphin County where the Residence is located. Debtor

argues, however, that neither the MSA nor the divorce decree appears on any property-related

docket or index in Dauphin County records as required under state law. Rather than address

whether the MSA is properly recorded or docketed, the Court must first decide whether the

instrument complies with the terms of § 4303(a).

8

The MSA provides that the parties "agree that this Agreement shall be incorporated into the final divorce decree and shall not merge for purposes of enforcement." Comp. Ex. A, ¶ 23. However, the divorce decree does not reference the agreement and simply states that the parties are divorced.

The first issue to be addressed is whether the divorce decree is "a judgment or other order of a court of common pleas for the payment of money." Even if I were to conclude that the incorporation language in the MSA makes the agreement an order of court, it does not constitute an order for the payment of money. The MSA simply states how the parties have agreed to divide the equity in the Residence. It provides that: "[o]nce the outstanding debt against the [Residence] has been paid, the remaining equity in the property as determined by an appraisal of the [Residence] shall be allocated as follows: Husband - 35% of remaining equity; and Wife - 65% of remaining equity." Comp. Ex. A, ¶ 2.A. This language reflects an agreement to share equity, not an order of the court for the payment of money. Further evidence of this intent is provided by the provision that "[t]he Husband and Wife agree that the Husband may evidence this debt by a second mortgage on the property." Comp. Ex. A, ¶ 2.B. Howard never exercised this right under the MSA. As the Bankruptcy Court for the Western District of Pennsylvania found on similar facts, having provided separately for the recording of a mortgage, "the parties did not intend that attachment of the settlement agreement to the divorce decree would create a lien. . . ." *White v. Pacileo (In re Pacileo)*, 87 B.R. 380, 384 (Bankr. W.D. Pa. 1988). Therefore, the Motion to Dismiss will be granted as to Count II.

*D. Count III – Dischargeability under § 523(a)(2)(A)*

Section 523(a)(2)(A) provides that a debt may be excepted from discharge if it was:

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by –

> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

11 U.S.C. § 523(a)(2)(A).

In order to prevail in a § 523(a)(2)(A) action, a creditor must prove each of the following five common law elements of fraud: (1) the debtor made a false representation; (2) the debtor knew the representation was false when it was made; (3) the debtor intended to deceive the creditor or to induce him to act upon the representation; (4) the creditor justifiably relied upon the representation; and (5) the creditor sustained a loss as a proximate result of the representation. *Rembert v. AT&T Universal Card Services, Inc. (In re Rembert),* 141 F.3d 277, 280-81 (6th Cir. 1998); *Chase Bank USA v. Ritter (In re Ritter)*, 404 B.R. 811, 822 (Bankr. E.D. Pa. 2009); *Nace v. Quibell (In re Quibell),* Adv. No. 1-10-ap-00337, 2012 WL 1144422 (Bankr. M.D. Pa. April 4, 2012). "[A] broken promise to repay a debt, without more, will not sustain a cause of action under § 523(a)(2)(A)." *In re Harrison*, 301 B.R. 849, 854 (Bankr. N.D. Ohio 2003) (citation omitted). "Instead, central to the concept of fraud is the existence of scienter which, for purposes of § 523(a)(2)(A) requires [proof] that at the time the debt was incurred, there existed no intent on the part of the debtor to repay the obligation." *Id.* (citing *AT&T Card Services v. Mercer (In re Mercer))*, 246 F.3d 391, 403 (5th Cir. 2001).

Rule 9(b) of the Federal Rules of Civil Procedure "requires a plaintiff to plead with particularity the circumstances of the alleged fraud in order to place the defendants on notice of

10

the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." *In re Intern'l Auction and Appraisal Services, LLC,* 493 B.R. 460, 467 n. 5 (Bankr. M.D. Pa. 2013) (quoting *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.,* 742 F.2d 786, 791 (3d Cir. 1984)).

Debtor contends that Howard has failed to state a claim under Rule 12(b) because he has failed to alleged a specific misrepresentation made by Debtor. Howard asserts that Debtor "made a false representation by executing the MSA" when she had neither the intention nor the ability to perform. Compl. ¶ 60. Therefore, Howard is not alleging Debtor made an express misrepresentation in connection with the execution of the MSA, but rather that her knowledge of her financial condition at the time the document was executed and her inability to fulfill the terms of the MSA was an implied misrepresentation.[2] When an objection to the discharge of a debt is based on an implied misrepresentation, the plaintiff must allege facts to prove that the debtor had no intention to perform or did not have a reasonable basis to believe she could perform. *Am. Honda Fin. Corp. v. Ippolito (In re Ippolito)*, Adv. No 12-8403-ast, 2013 WL 828316, *5 (Bankr. E.D. N.Y. March 6, 2013) (citations omitted). The Complaint cannot survive dismissal on these alleged facts as the parties agree that Debtor made a partial payment on her obligation to Howard under the MSA.

---

[2]The viability of this argument may be affected by a case that will be before the U.S. Supreme Court next term. The Supreme Court granted certiorari to *Husky Int'l Electronics, Inc. v. Ritz (In re Ritz)*, 787 F.3d 312 (5th Cir. 2015), *cert. granted*, No. 15-145, 2015 WL 4600346 (Mem), 84 U.S.L.W. 3078 (Nov. 6, 2015), to determine whether a debtor must make a false representation to commit "actual fraud" under § 523(a)(2)(A) or whether fraudulently transferring money to avoid repayment of a debt is sufficient.

Howard also argues that his debt should be excepted from discharge because of misrepresentations Debtor made in August or September 2014 when she persuaded Howard to lend her $5000 to allow her to obtain financing to satisfy Howard's claim. In this oral agreement between the parties, Debtor agreed to pay Howard the balance owed under the MSA within one year, and Howard agreed to refrain from pursuing his remedies under the MSA in state court. After Howard lent her $5000, she paid off an existing loan encumbering the Residence and obtained a new loan, but she only paid him approximately half the amount due before filing for bankruptcy. Howard further alleges that Debtor entered into this oral agreement to deceive him, that she knew he was relying on her promises to repay him from the loan proceeds and that she never intended to repay the balance of the funds she borrowed. This second set of allegations is sufficient to withstand Debtor's Motion to Dismiss. Therefore the Motion to Dismiss as to Count III will be denied.

### E. Count IV – Dischargeability under § 523(a)(4)

Section 523(a)(4) renders nondischargeable any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny." 11 U.S.C. §523(a)(4). In Count IV, Howard asserts that his claim cannot be discharged because it arose from Debtor's "defalcation while acting in a fiduciary capacity." Compl. ¶ 104. In his brief, however, Howard abandons this argument and asserts that Debtor committed embezzlement.

An embezzlement claim has five elements: (1) the debtor was entrusted, (2) with property, (3) of another, (4) which the debtor misappropriated, (5) with fraudulent intent. *Bannon v. Tyson (In re Tyson)*, 450 B.R. 514, 522 (Bankr. E.D. Pa. 2011). "To prove embezzlement, the creditor must show that the debtor appropriated lawfully received funds for

12

his own benefit and did so with fraudulent intent or deceit." *Brihn v. Truch (In re Truch)*, 508 B.R. 616, 623 (Bankr. D. N.J. 2014) (citations omitted); *In re Griffith*, No. 1:13-bk-04362MDF, 2014 WL 4385743, *4 (Bankr. M.D. Pa. Sept. 4, 2014). Because the allegations in Count IV relate to allegations of defalcation while acting as a fiduciary and not to acts of embezzlement, the Motion to Dismiss will be granted as to Count IV with leave to file a further amended complaint.

### F. Count V – Objection to discharge under § 1328

In the final count of the Complaint, Howard objects to his claim being discharged upon the completion of payments of the plan as provided in 11 U.S.C. § 1328. Section 523(a)(15) excepts from discharge an obligation to a former spouse that is incurred in the course of a divorce other than a domestic support obligation. In a Chapter 13 case, however, these obligations may be discharged upon completion of the plan. In Count V, Howard asserts that Debtor is not entitled to discharge her obligation to Howard for two reasons. First, he alleges that he holds a property right not a debt, the same legal argument he asserted in connection with his request for imposition of a constructive trust. This allegation is redundant and does not support any additional request for relief. Second, Howard asserts that the value of property Debtor proposes to distribute under the plan is less than what would be paid to creditors in a Chapter 7 case. This latter argument, as acknowledged by Howard, is more properly considered as part of the confirmation process when the "best interest of creditors" test is applied as one of the requirements for confirmation under §1325(a)(5). Therefore, Count V will be dismissed.

13

**IV. Conclusion**

For the reasons set forth above, Debtor's Motion to Dismiss Counts I and III of the Complaint will be denied. The Motion to Dismiss as to Counts II and V will be granted. The Motion to Dismiss Count IV will be granted with leave to amend within thirty days.

**By the Court,**

Mary D France

Chief Bankruptcy Judge

Date: November 20, 2015

14