IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | * |
| JILL M. HOWARD, | * CHAPTER 13 |
|     Debtor | * |
| | * CASE NO. 1:14-bk-05752-MDF |
| RANDY L. HOWARD, | * |
|     Plaintiff | * |
| | * |
| v. | * ADV. NO. 1:15-ap-00067-MDF |
| | * |
| JILL M. HOWARD, | * |
|     Defendant | * |

**OPINION**

Plaintiff Randy L. Howard ("Howard") filed a complaint against his ex-wife Jill M. Howard ("Debtor") seeking to enforce the terms of the Marital Settlement Agreement (the "MSA") entered into by the parties before they divorced in 2012. Under the terms of the MSA, Howard agreed to transfer his interest in the marital residence (the "Residence") to Debtor in exchange for a payment of 35% of the equity. Before Debtor paid Howard his interest in full she filed for bankruptcy. Howard filed this adversary proceeding arguing that Debtor hold his equity interest in the Residence in constructive trust. Alternatively, he argues that the unpaid balance of his equity interest should be excepted from discharge under § 523(a)(2)(A). For the reasons below, I find that Debtor does not hold Howard's prior interest in the Residence in constructive trust and that Howard has failed to meet his burden to prove that his claim should be excepted from discharge.

**I. Factual Background**

On September 19, 2012, Howard and Debtor executed the MSA in which they agreed to divorce and settle all property issues between them. The parties were not represented by separate

counsel when the agreement was being negotiated. The MSA provided that Debtor would become the sole owner of the Residence when she refinanced the mortgage on or before July 1, 2012. The parties delayed executing the MSA for several months so the refinancing deadline had expired by the time the agreement was executed. The parties proceeded in good faith to fulfill the intention of the MSA, but almost from the beginning it became apparent that implementation of the agreement would be difficult. The parties were divorced on October 17, 2012.

Under the terms of the MSA, Howard was entitled to receive 35% of the equity no later than two years from the refinancing date. The Residence was appraised at $223,500 and the parties agreed that their joint equity interest was approximately $100,000. Debtor refinanced the Residence on November 28, 2012, and Howard conveyed his interest to Debtor. The refinancing enabled Debtor to obtain a new mortgage of approximately $178,800, but it generated only $2,923.77 in cash after closing costs, a second mortgage obligation, and certain credit card debts were paid. No funds were disbursed to Howard. At this point, Debtor became obligated to pay Howard $35,000 on or before November 28, 2014. Although the MSA authorized Howard to record a mortgage against the Residence to secure his interest, he did not exercise this right.

Debtor made no payments to Howard from the date she refinanced her mortgage until July 2014, when it became apparent to the parties that Debtor would be unable to meet the two-year deadline. Since the parties' divorce, Howard and Debtor maintained a cordial relationship and frequently dated. When the deadline neared, the parties met to discuss other options that would enable Debtor to pay Howard his share of the equity. Debtor shared information about her finances with Howard, and they discussed payment options together. Throughout the parties'

2

fifteen-year relationship, it was their practice to borrow against their 401k accounts when they had cash flow problems.

After the parties' divorce, Debtor experienced increased financial pressure. Even though she had obtained a second job, Debtor had inadequate income and no additional assets to pay $35,000 to Howard. In July 2014, Debtor had two outstanding loans against her 401k plan. Howard offered to loan Debtor $5000 to pay off one of the loans so she could obtain a new loan to pay him at least a portion of his equity interest. He further agreed that if she took out a new loan and made a partial payment, he would give her an extension of one year to satisfy the obligation and would not exercise his rights under the MSA to mortgage the Residence or force it to be sold. If Debtor did not pay the balance of the equity to Howard at the end of the year extension, the parties agreed that Debtor would list the house for sale.[1]

Debtor accepted Howard's offer, borrowing $5000 from him to pay off an open 401k loan and then taking out a new loan. From the proceeds of the new loan she paid Howard $17,165, or approximately half the amount he was to receive under the MSA. She also repaid the $5000 loan. Adding the new loan payments to her budget, however, only increased her financial distress. On December 15, 2014, Debtor filed a bankruptcy petition without paying the balance of Howard's claim.

## II. Procedural History

On April 22, 2015, Howard filed an unsecured proof of claim for $17,835. Around the same time he commenced an adversary proceeding seeking a determination that his claim was

---

[1]Howard testified that the parties discussed modifying the MSA to reflect this verbal agreement, but the modification was never formalized.
3

not subject to discharge. The complaint was dismissed on June 23, 2015 after he failed to respond to Debtor's motion to dismiss. On July 1, 2015, the case was reinstated with Debtor's concurrence, and Howard was granted leave to file an amended complaint (the "Amended Complaint").

On July 29, 2015, Howard filed the Amended Complaint seeking a determination alternatively: (1) that Howard's equity interest in the Residence was held in constructive trust premised upon the parties confidential relationship and unjust enrichment; (2) that Howard's interest was secured in the Residence through the divorce decree; and (3) that if considered to be a debt and not a property interest, the debt should be excepted from discharge under 11 U.S.C. § 523(a)(2), (a)(4) or (a)(15).

On August 17, 2015, Debtor filed a Motion to Dismiss the Amended Complaint. On November 20, 2015, I issued an order dismissing all counts other than Count I, the claim that Howard's equity interest was held in constructive trust, and Count III, the claim that the debt was excepted from discharge under § 523(a)(2).[2] In the opinion issued in conjunction with the November 20 Order, I determined that Howard had failed to allege sufficient facts to support his assertion that a confidential relationship existed between the parties. Trial on the remaining counts was held on June 23, 2016. This matter is ripe for a decision.[3]

---

[2] The count in Howard's complaint seeking a finding that the debt was excepted from discharge under 11 U.S.C. § 523(a)(4) was dismissed with leave to amend, but Howard elected not to filed a further amended complaint.

[3] This Court has jurisdiction pursuant to 28 U.S.C. §§157 and 1334. This matter is a core, non-*Stern* proceeding pursuant to 28 U.S.C. §157(b)(2)(A), (I) and (O). This Opinion constitutes findings of fact and conclusions of law made pursuant to Federal Rule of Bankruptcy Procedure 7052.

### III. Discussion

*A. Is Howard's interest in the Residence held in constructive trust?*

Howard asks the Court to declare that the balance of the equity interest owed to him is not a claim against the estate, but his property interest held by Debtor in constructive trust. Property subject to an express or constructive trust is excluded from the estate under 11 U.S.C. § 541(d). *Official Comm. of Unsecured Creditors of Columbia Gas Transmission Corp. v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys, Inc.*), 997 F.2d 1039, 1059 (3d Cir. 1993) (applying federal common law). If a debtor holds only bare legal title to property, the property remains outside the estate. The issue of whether a trust exists, however, is a matter of state law. *Butner v. U.S.,* 440 U.S. 48, 54 (1979). ("Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law.") (footnote omitted). Thus, I must look to Pennsylvania law to determine whether Howard's interest in the Residence is held in constructive trust.

> Pennsylvania courts recognize constructive trusts, which they have defined as:
>
> a relationship with respect to property subjecting the person by whom the title to the property is held to an equitable duty to convey it to another on the ground that his acquisition or the retention of the property is wrongful and that he would be unjustly enriched if he were permitted to retain the property.

*City of Phila. v. Heinel Motors,* 142 Pa. Super. 493, 502-03, 16 A.2d 761, 765-66 (Pa. Super. 1940); *See Yohe v. Yohe*, 466 Pa. 405, 411, 353 A.2d 417, 420 (1976); *Gee v. Eberle*, 279 Pa. Super. 101, 112, 420 A.2d 1050, 1056 (Pa. Super. 1980); *Kern v. Kern,* 892 A.2d 1, 8 (Pa. Super. 2005). The equitable duty to hold property in trust for another arises only in the presence of fraud, duress, undue influence, mistake, or abuse of a confidential relationship. *Yohe,* 466 Pa. at 411, 353 A.2d at 421.

A constructive trust is a fictional trust, which serves as an equitable remedy. *In re Joseph B. Dahlkemper Co., Inc.*, 165 B.R. 149, 154 (Bankr. W.D. Pa. 1994) (citing *Stauffer v. Stauffer*, 465 Pa. 558, 567, 351 A.2d 236, 241 (1976)); *Roberson v. Davis*, 397 Pa. Super. 292, 296, 580 A.2d 39, 41(1990); *Denny v. Cavalieri,* 297 Pa. Super. 129, 132, 443 A.2d 333, 335 (1982). It is not necessary for the parties to intend to create a trust for one to arise. *Gee,* 279 Pa.Super. at 112, 420 A.2d at 1056.

Pennsylvania follows the majority rule that a constructive trust attaches or relates back to the time the wrongful act was committed. *Electric M&R, Inc. v. Aultman (In re Aultman),* 223 B.R. 481, 483 (Bankr.W.D.Pa.1998) (citing *Grubbs v. Demec*, 274 Pa. Super. 362, 418 A.2d 445, 447 n.1 (1980)) ([T]he constructive trust is in existence *at the inception of the transaction*, . . . and the beneficiary is possessed with an equitable interest in the trust property *prior to* the declaration of the constructive trust.") (emphasis in *Aultman*).[4] Therefore, in a bankruptcy case, if a court finds that a prepetition transaction involving a debtor's property is subject to a constructive trust in favor of another party, the property interest of the party does not become property of the debtor's estate under 11 U.S.C. § 541(a). *See In re Paul J. Paradise & Associates,*

---

[4]The Third Circuit has held that state law determines whether property is subject to a constructive trust, *see City of Farrell v. Sharon Steel Corp*, 41 F.3d 92, 95 (3d Cir. 1994), but other circuits disagree. In *XL/Datacomp, Inc. v. Wilson ( In re Omegas Group*), 16 F.3d 1443, 1452 (6th Cir. 1994), the Sixth Circuit stated, without reference to applicable state law, that a constructive trust comes into existence when it is expressly recognized by the court. The Court further held that "just because something is so under state law does not necessarily make it so under the Bankruptcy Code" and that a constructive trust is not an interest in property. *Id.* As I have observed previously, the *Omegas* decision is at odds with Third Circuit precedent that state law determines when an interest in property is created. *See Kamand Construction, Inc. v. Property Management, Inc. (In re Kamand Construction, Inc.)* 298 B.R. 251, 255 (Bankr. M.D. Pa. 2003).

*Inc.*, 249 B.R. 360, 370–71 (D. Del. 2000) (observing that "the majority rule is that constructive trusts attach or relate back to the time of the unlawful act that led to the creation of the trust").

Under Pennsylvania law, unless a confidential relationship is established, Howard shoulders the heavy burden of establishing that his equity interest in the Residence was held by Debtor in constructive trust. *See Brockway Pressed Metals, Inc. v. Eynon Associates, Inc., (In re Brockway Pressed Metals, Inc.)* 363 B.R. 431, 454 (Bankr. W.D. Pa. 2007). The evidence produced must be "clear, direct, precise and convincing." *Kamand Construction*, 298 B.R. at 255 (citing *Robertson v. Davis*, 397 Pa. Super, 292, 296,580 A.2d 39, 41 (1990) (other citations omitted)).

In the Amended Complaint, Howard asserts that a confidential relationship exists both as a matter of law and as a matter of fact. Under Pennsylvania law, marital relationships are not confidential as a matter of law but are dependent upon the relationship of the parties. *Butler v. Butler*, 464 Pa. 522, 528 (1975). A confidential relationship arises when one spouse places confidence in the other "with a resulting superiority and influence on the other side." *Yohe,* 466 Pa. at 412. Howard argues, however, that irrespective of the nature of their relationship, § 3507 of the Divorce Code imposes a constructive trust on the interest of each former spouse in property formerly held as tenants by the entireties, but converted to tenants in common following divorce.[5] While this observation may be correct, § 3507 explicitly states that a divorce decree or

---

[5]A confidential relationship may arise as a matter of law when one party serves as a fiduciary for the other such as a trustee, attorney or guardian. *DePaul v. DePaul*, 287 Pa. Super. 244,, 249 429 A.2d 1192, 1194 (1981).

other order entered under the Divorce Code may modify this general rule.[6] Although Howard and Debtor would have held the Residence as tenants in common once the divorce decree was entered in the absence of an order, the MSA explicitly provided that Debtor would become the sole owner of the Residence. Howard was obligated to transfer his interest in the Residence to Debtor when it was refinanced. Debtor's obligation to pay Howard $35,000, however, did not arise until two years after she refinanced the mortgage. Once Howard deeded his interest in the Residence to Debtor, he no longer held an interest in the property as a tenant in common. The provision in the MSA enabling Howard to obtain a mortgage lien on the Residence to secure Debtor's obligation under the MSA supports the conclusion that the agreement between the parties did not contemplate Howard retaining an interest as a tenant in common after Debtor obtained a new mortgage.[7] Therefore, there is no support in the Divorce Code for the proposition that a confidential relationship arose as a matter of law between Debtor and Howard.

---

[6]Section 3507 provides:
Whenever married persons holding property as tenants by entireties are divorced, they shall, *except as otherwise provided by an order made under this chapter*, thereafter hold the property as tenants in common of equal one-half shares in value, and either of them may bring an action against the other to have the property sold and the proceeds divided between them.

23 Pa. Cons. Stat. Ann. § 3507 (emphasis added).

[7]Under Pennsylvania law a mortgage is both a conveyance of title and a security interest. *Pines v. Farrell*, 577 Pa. 564, 574, 848 A.2d 94, 100 (2004). A mortgage is "a defeasible deed, requiring the grantee to reconvey the property held as security to the grantor upon satisfaction of the underlying debt or fulfillment of established conditions." *Id*. (*quoting Hahnemann Medical Coll. & Hosp. v. Commonwealth,* 52 Pa. Cmwlth. 558, 416 A.2d 604, 607 (1980)). If Howard had recorded a mortgage against the Residence he would have obtained a "defeasible deed," but not an interest as a tenant in common.

8

In the Amended Complaint, Howard also argues that the facts of this case support the imposition of a constructive trust. In the Opinion I issued on November 20, 2015 on Debtor's Motion to Dismiss, I held that Howard alleged no facts to support the finding of a confidential relationship. Because Howard failed to further amend the Amended Complaint, he was barred from introducing evidence as to facts not alleged in the Amended Complaint. Therefore, I am unable to find that a constructive trust should be imposed based upon the existence of a confidential relationship as a matter of fact.[8]

Howard also asserts, however, that even in the absence of a confidential relationship, principles of unjust enrichment support his request for imposition of a constructive trust. Where a transfer of property is induced by fraud, duress, or undue influence, a constructive trust is imposed without proof of confidential relationship. *Stauffer v. Stauffer*, 465 Pa. 558, 569, 351 A.2d 236, 241 (1976). The elements a plaintiff must prove to establish unjust enrichment are the following: 1) benefits conferred on defendant by plaintiff; 2) appreciation of such benefits by defendant; and 3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value. *Mitchell v. Moore,* 729 A.2d 1200, 1203 (Pa. Super. 1999). "To sustain a claim of unjust enrichment, a claimant must show that the party against whom recovery is sought either 'wrongfully secured or passively received a benefit that it would be unconscionable for her to retain.' " *Id.* (citing

---

[8] It should be noted, however, that even if Howard's testimony as to the existence of a confidential relationship is considered, the evidence introduced was insufficient to meet Howard's burden of proof. Howard testified that he had no reason not to trust Debtor to eventually pay him his share of the equity in the Residence, but failed to offer any evidence that Debtor demonstrated "a resulting superiority and influence" in her relationship with Howard. I find that the parties continued "romantic" relationship after the divorce to have little relevance to the issue of whether a confidential relationship existed between the parties.

*Torchia v. Torchia*, 346 Pa. Super. 229, 499 A.2d 581, 582 (Pa. Super. 1985)). Wrongful intent on the defendant's part is not required. The test is whether the defendant has been unjustly enriched. *Torchia,* 499 A.2d at 581-82.

In addition to a showing of actual or potential unjust enrichment, there also must be a specific trust *res* identified upon which a constructive trust may be imposed. *Gee*, 420 A.2d at 1061 n.9; *Louis Dolente & Sons*, 252 F.Supp at 183. "'Constructive trust' is a declaratory judgment about property out of place." *Restitution in Bankruptcy: Reclamation and Constructive Trusts,* Andrew Kull, 72 Am. Bankr. L. J. 265, 287 (1998). Ownership, possession, and title to property have been separated through an involuntary transfer usually as a result of fraud, mistake, or coercion. *Id. See Yohe,* 466 Pa. at 411, 353 A.2d at 421; *Sacred Heart Hosp. of Norristown*, 175 B.R. at 555. Here, Howard seeks imposition of a trust on the value of his equity interest in the Residence at the time the property was refinanced. The difficulty with Howard's argument, however, is that no "involuntary transfer" of property occurred. Under the terms of the MSA, once Debtor obtained refinancing Howard was obligated to transfer his interest in the Residence. This is exactly what occurred. Debtor neither "wrongfully secured" or "passively received" title to the Residence that it would be unconscionable for her to retain.

Howard, however, also asserts that Debtor fraudulently deprived him of his interest in the Residence through a series of misrepresentations. He alleges that Debtor misrepresented that she would refinance the Residence by July 12, 2012; that she would give Howard his 35% equitable interest in return for the transfer of legal title; and that after paying Howard approximately one half of his share of the equity in the Residence, she would pay the remaining share within one year. Even though Debtor did not refinance the mortgage on the residence by July 12, 2012 as

10

Case 1:15-ap-00067-MDF    Doc 50    Filed 12/07/16    Entered 12/07/16 14:59:30    Desc
Main Document    Page 10 of 17

the MSA provided, Debtor refinanced a mere two months after the MSA was executed.[9] Furthermore, under the MSA the transfer of legal title was conditioned upon the refinancing, not the payment of Howard's equity interest.

I find no evidence of misrepresentation or fraud by Debtor. The parties consulted on a plan that would allow Debtor to pay Howard his equity interest within two years. When Debtor was unable to perform, she borrowed against her 401k account and paid Howard approximately one-half of the amount due under the MSA. Howard then agreed to extend the payment period an additional year. At some point, Debtor realized she was unable to repay the new 401k loan obligation, her daily living expenses, and pay Howard the balance of his claim. Accordingly, she elected to file bankruptcy.

While it is understandable that Howard believes he was defrauded, a bankruptcy filing is often predicated on a debtor's inability to perform under a contract. As Judge Thomas has observed:

> While we are mindful that an entity which receives something for no consideration, and not as a gift, is unjustly enriched, we are compelled to observe that if that were the only standard, then every creditor in every bankruptcy case could claim to be the beneficiary of a constructive trust and therefore not subject to the distribution schedules outlined by the Bankruptcy Code.

*In re Globe Store Acquisition Co., Inc.,* 178 B.R. 400, 404 (Bankr. M.D. Pa.1995). Howard fully understood that he would not be paid for two years after he deeded his interest in the Residence to Debtor. He had an opportunity to secure his right to payment with a mortgage, but he chose not to do so. While evidence of the parties continuing romantic relationship no doubt encouraged

---

[9] It is unclear how Debtor was expected to refinance by July 12, 2012 when her obligations under the MSA did not arise until after the agreement was executed in September, 2012.

the informal approach to implementing the MSA adopted by the parties, no evidence was introduced that Debtor used this relationship to mislead Howard. Accordingly, I do not find that Howard has established that fraud, duress, or undue influence exists that would support a finding that his equity interest in the Residence was held by Debtor in constructive trust.

  *B. Dischargeability under § 523(a)(2)(A)*

Alternatively, Howard argues that he should be found to be an unsecured creditor whose debt is nondischargeable. For some of the same reasons I find that Howard's interest in the property was not held in constructive trust, I also find that the debt owed to Howard is not excepted from discharge.

Exceptions to discharge listed in § 523 of the Bankruptcy Code are construed narrowly in favor of dischargeability. *Griffith, Stricklyer, Lerman, Solymos & Calkins v. Taylor (In re Taylor)*, 195 B.R. 624, 627 (Bankr. M.D. Pa. 1996). A creditor bears the burden of proving by the preponderance of the evidence that the debt owed to him should be excepted from discharge. *Grogan v. Garner*, 498 U.S. 279, 288-89 (1991). Howard argues that the debt owed to him is excepted from discharge under § 523(a)(2)(A), which provides that a debt is not discharged if the debt was:

> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by –
> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

11 U.S.C. § 523(a)(2)(A).

A "broken promise to repay a debt, without more, will not sustain a cause of action under § 523(a)(2)(A)." *In re Harrison*, 301 B.R. 849, 854 (Bankr. N.D. Ohio 2003) (citation omitted).

12

"Instead, central to the concept of fraud is the existence of scienter which, for purposes of § 523(a)(2)(A) requires [proof] that at the time the debt was incurred, there existed no intent on the part of the debtor to repay the obligation." *Id.* (citing *AT&T Card Services v. Mercer (In re Mercer)*, 246 F.3d 391, 403 (5th Cir. 2001)). Because a debtor is unlikely to admit to engaging in deception, intent often must be inferred from the totality of the circumstances. *In re Bocchino*, 794 F.3d 376, 382 (3d Cir. 2015).

*1. Did Debtor engage in a fraudulent scheme?*

The Supreme Court recently has held that "actual fraud" under § 523(a)(2)(A) includes fraudulent schemes even if the debtor makes no misrepresentations to the injured party. *Husky Intern. Elec., Inc. v. Ritz*, ___ U.S. ___, 136 S. Ct. 1581, 1586 (2016). "Actual fraud" is a concept distinct from "false representation" and includes "anything that counts as 'fraud' and is done with wrongful intent." *Id.* To establish actual fraud under § 523(a)(2)(A), a creditor must prove that 1) the debtor engaged in actual fraud; 2) the debtor obtained money, property, services or credit by engaging in actual fraud; and 3) the debt arose from the actual fraud. *Hatfield v. Thompson (In re Thompson),* 555 B.R. 1, 10 (BAP 10th Cir. 2016).

Here, after considering the totality of the circumstances, I find that Howard has failed to establish that Debtor engaged in "actual fraud." To establish that Debtor devised and implemented a fraudulent scheme under § 523(a)(2)(A), Howard was required to prove that Debtor entered into the MSA with no intent to pay him his equity interest once she obtained title to the Residence, that she used the two-year payment period to deter him from exercising his rights under the agreement, and that when he finally demanded payment she filed for bankruptcy.

13

The evidence introduced does not support these conclusions. Debtor and Howard agreed under the MSA that she would refinance the Residence and that he would convey his interest to her. In exchange for his interest in the Residence, Debtor would pay Howard $35,000. She was not obligated to immediately pay him upon refinancing as both parties recognized that she lacked the financial resources to satisfy the obligation immediately. Instead, the MSA provided that Debtor would have two years to pay Howard the value of his interest.

Howard suggests that Debtor's fraudulent intent is demonstrated by a variety of factors. He correctly observes that Debtor paid other unsecured creditors when she refinanced, but made no payments to him. However, she testified credibly that she was required by her new lender to pay off certain debts to obtain refinancing and less than $3000 was received in cash. Howard also argues that Debtor knew before she signed the MSA that her income was insufficient to pay him 35% of the equity. While it may have been unrealistic for Debtor to enter into the agreement, Howard was fully aware of Debtor's limited budget and worked with her to develop strategies to enable her to pay out his interest.

The requisite intent to establish actual fraud is missing. Debtor's actions from the time she executed the MSA until she filed her petition do not support Howard's allegations of a fraudulent scheme. The evidence suggests that while the parties worked for several years to develop strategies that would enable Debtor to pay her obligation to Howard in full, their efforts fell short. While in hindsight it was unrealistic for Debtor to agree to the terms of the MSA in light of her existing financial resources, I do not find that Debtor devised a scheme intending to defraud Howard.

14

### *2. Did Debtor misrepresent her intention to pay Howard?*

For a debt to be found nondischargeable based on a misrepresentation, certain common law tort elements must be present. *Field v. Mans*, 516 U.S. 59, 70 n.9 (1995). The creditor must prove by a preponderance of the evidence that: 1) the debtor made a false representation; 2) the debtor knew the representation was false when it was made; 3) the debtor made the misrepresentation to deceive the creditor; 4) the creditor justifiably relied upon the representation; and 5) the creditor sustained a loss as a proximate result of the misrepresentation. *Rembert v. AT&T Universal Card Services, Inc. (In re Rembert),* 141 F.3d 277, 280-81 (6th Cir. 1998); *Chase Bank USA v. Ritter (In re Ritter)*, 404 B.R. 811, 822 (Bankr. E.D. Pa. 2009); *Nace v. Quibell (In re Quibell),* Adv. No. 1-10-ap-00337, 2012 WL 1144422 (Bankr. M.D. Pa. April 4, 2012).

Howard alleges that Debtor made several misrepresentations during the negotiation and execution of the MSA, at the time the Residence was refinanced, and in connection with the year extension of the payment date. First, Howard states that Debtor misrepresented that she would refinance the Residence by July 12, 2012. As I discussed above, the delay in the execution of the MSA rendered unenforceable the July 2012 refinancing deadline.

Next, Howard argues that Debtor never intended to pay him his interest in the Residence in exchange for the transfer of legal title or that she recklessly entered into an agreement that she could not perform. Both parties understood that the refinancing would not produce a payout for Howard. Both parties entered into the MSA with the understanding that Debtor would have to obtain additional income or loans to pay Howard's interest. While the parties confidence that Debtor would be able to pay $35,000 in two years was misplaced, I do not find that Debtor's

15

agreement to make this payment was entered into recklessly or with the intention to defraud Howard.

Howard makes a stronger case for misrepresentation in connection with his promise to extend the MSA term for an additional year in exchange for a partial payout. Howard lent Debtor $5000 to enable her to satisfy one 401k loan so she could obtain a larger one to partially satisfy Howard's claim. While Debtor did repay the $5000 loan and paid approximately half of Howard's equity interest, she filed bankruptcy approximately four months later seeking to discharge the balance due on Howard's claim. Based on all the evidence, however, I do not find that Debtor misrepresented her intention to repay Howard when he agreed to extend her time for performance.

Debtor testified that the increased payments on the new 401k loan created an even greater financial burden that she was unable to meet. Being unable to pay her debts, Debtor sought legal advice and learned that could discharge the remaining balance owed to Howard. While Debtor's action in filing for bankruptcy deprives Howard of the benefit of the bargain made between the parties, Debtor's decision to file for bankruptcy was premised on the reality of her finances at the time. I find credible Debtor's representation that she intended to repay Howard until she determined it was impossible for her to do so.

## IV. Conclusion

For the reasons set forth above, I find that judgment should be entered against Howard and in favor of Debtor on both Count I and Count III of the Amended Complaint.

**By the Court,**

Date: December 7, 2016

_Mary D. France_
Bankruptcy Judge